UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELIZABETH ARSENAULT,

      Plaintiff,

v.                                 CASE NO. 3:16-cv-9-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her applications for a period of disability, disability insurance

benefits, and supplemental security income.  Plaintiff alleged that she became

disabled on April 24, 2009.  (Tr. 416, 420.)  Plaintiff's applications were denied

initially and on reconsideration.  A hearing was held before an Administrative Law

Judge on August 24, 2011.  (Tr. 118-67.)  The Administrative Law Judge found

Plaintiff not disabled.  (Tr. 171-92.)  Plaintiff requested review by the Appeals

Council (Tr. 297) and the Appeals Council remanded the claim in an order dated

September 21, 2012 (Tr. 193-97).

A hearing was held before another Administrative Law Judge ("ALJ") on

April 3, 2014.  (Tr. 90-117.)  On June 13, 2014, the ALJ rendered a decision

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Docs. 15, 17.)

finding Plaintiff not disabled.  (Tr. 198-221.)  Plaintiff again requested review of the ALJ's decision by the Appeals Council (Tr. 356-58) and the Appeals Council again remanded the claim in an order dated November 10, 2014 (Tr. 222-27).

Another hearing was held before the ALJ on June 10, 2015, at which Plaintiff was represented by an attorney.  (Tr. 48-89.)  The ALJ found Plaintiff not disabled since April 24, 2009, the alleged onset date, through August 6, 2015, the date of the decision.  (Tr. 16-45.)  Plaintiff requested review of the ALJ's decision by the Appeals Council (Tr. 7-8), but this time the Appeals Council denied review of the decision (Tr. 1-6).

Plaintiff is appealing the Commissioner's decision that she was not disabled during the relevant time period.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned determines that the Commissioner's decision is due to be **AFFIRMED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant

evidence as a reasonable person would accept as adequate to support a

conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

2004).  Where the Commissioner's decision is supported by substantial evidence,

the district court will affirm, even if the reviewer would have reached a contrary

result as finder of fact, and even if the reviewer finds that the evidence

preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991).  The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision.  *Foote v.

Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to

determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff argues the following three general points on appeal: (a) that the

ALJ erred in failing to properly weigh the record medical opinions; (b) that the ALJ

failed to properly consider Plaintiff's credibility; and (c) that the ALJ failed to pose

a proper hypothetical question to the vocational expert ("VE").  (Doc. 19.)

Specifically, Plaintiff contends that the ALJ erred in assigning no weight to the

Psychiatric/Psychological Impairment Questionnaire ("PIQ") co-signed by social

worker Kathleen Thunberg and Dr. Melinda Randall on August 27, 2010, wherein

Ms. Thunberg opined that Plaintiff has various marked limitations, that she is

incapable of even low stress jobs, and that she would miss work more than three (3) times per month.  (*Ia.* at 15-19; Tr. 83-37.)  Similarly, Plaintiff argues that the ALJ erred in giving no weight to opinions of treating nurse practitioner Cheryl Larkawilla and treating physician Howard Offenberg, who rendered similar opinions.  Plaintiff further contends that the ALJ's credibility determination is not supported by substantial evidence and that the ALJ omitted moderate restrictions from his hypothetical question posed to the VE.  (*Ia.* at 19-25.)

Defendant responds that the ALJ sufficiently considered and weighed the record medical opinions.  Further, Defendant contends that the ALJ provided adequate reasons supported by substantial evidence for discounting Plaintiff's credibility and that the ALJ posed a hypothetical to the VE that encompassed all of Plaintiff's restrictions.  (Doc. 23.)

### A.    The ALJ's Decision

The ALJ determined that Plaintiff had severe impairments, including fibromyalgia, arthritis, sleep apnea, diabetes, post-traumatic stress disorder, and affective disorders.  (Tr. 22.)  The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.*)

Continuing on with the evaluation, the ALJ made the following RFC determination:

the undersigned finds that the claimant has the [RFC] to

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can sit up to 6 hours per day, without interruption for up to one hours [sic] at a time; the claimant can stand and/or walk up to 2 hours, without interruption for 15 minutes at a time.  The claimant can lift up to 10 pounds frequently and up to 20 pounds occasionally; no use of the right upper extremity above head level; occasional bending and stooping; no crawling; occasional climbing of stairs; no climbing ladders, ropes, or scaffolds; no crouching; occasional kneeling; use of a simple cane when standing and walking.  Additionally, the claimant is limited to semi-skilled work.

(Tr. 24.)  In making this finding, the ALJ did not find any support for the PIQ signed by Ms. Thunberg and co-signed by Dr. Randall.  The ALJ stated the following in relevant part:

> Clearly, [the PIQ] is inconsistent with the findings of Dr. Stephenson, who noted not [sic] significant issues with memory, persistence, or pace.  The claimant was noted to be in the average range of intelligence.  She had not [sic] problems with interacting with providers (Exhibit 11F).  This is also true with more recent progress notes from 2014 through 2015, reflecting no deficits with concentration or memory from providers at Stewart Marchman (Exhibit 64F).  In addition, Ms. Thumberg's [sic] opinion is inherently inconsistent with her treatment notes documenting her affect was congruent with her mood.   There was no evidence of thought disorder.  She was fully oriented and appeared to be of average intelligence with reasonable insight and judgment (Exhibit 32F).  In addition, Dr. Verones' assessment found no memory deficits and noted that claimant had obtained a college degree, undermining Ms. Thumberg's [sic] opinions (Exhibit 49F).  Ms. Thumberg [sic] also reassessed the claimant's GAF score in a subsequent follow-up appointment to 56, suggesting the claimant's symptoms are not as severe as Ms. Thumberg [sic] purports (Exhibit 52F).

(Tr. 30.)  The ALJ further discussed the opinions of Dr. Offenberg, Plaintiff's

treating physician, with respect to her physical restrictions.  Although the ALJ

afforded "some weight" to Dr. Offenberg's opinions regarding certain limitations,

the ALJ afforded "no weight" to Dr. Offenberg's opinions regarding "postural

limitations and duration for sitting, standing, and walking," as the evidence did not

support such limitations and his treatment notes did not document any significant

limitations on examinations.  (Tr. 30-31.)  Similarly, the ALJ afforded "no weight"

to the opinions of nurse practitioner Cheryl Larkawilla, as her opinions were

inconsistent with the evaluations of examining physicians Drs. Stephenson and

Verones, were not supported by objective evidence, and were not rendered by an

acceptable medical source.  (Tr. 31.)

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence and limiting effects of his

symptoms were not credible for the reasons explained in the decision.  (Tr. 25.)

With the benefit of testimony from the VE, the ALJ determined that Plaintiff

was capable of performing her past work as a receptionist.  (Tr. 34.)  As such, the

ALJ found that Plaintiff was not disabled.  (*Id.*)

## B.     The ALJ's Properly Weighed the Record Medical Opinions

Plaintiff contends that the ALJ erred by failing to designate weight given to

the opinions of social worker Thunberg, by according no weight to the opinions of

nurse practitioner Larkawilla, and by according no weight to Dr. Offenberg's

opinions regarding Plaintiff's postural limitations and duration for sitting, standing, and walking.

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight

7

than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518

(11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he

opinions of state agency physicians" can outweigh the contrary opinion of a

treating physician if "that opinion has been properly discounted," *Cooper v.*

*Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10,

2008).  Further, "the ALJ may reject any medical opinion if the evidence supports

a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*,  No. 06-15638,

2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v.*

*Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state

agency medical and psychological consultants because they 'are highly qualified

physicians and psychologists, who are also experts in Social Security disability

evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008)

(per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of

State agency medical consultants as expert opinion evidence of non-examining

sources).  While the ALJ is not bound by the findings of non-examining

physicians, the ALJ may not ignore these opinions and must explain the weight

given to them in his decision.  SSR 96-6p.

### i.   Ms. Thunberg's Opinions

Plaintiff argues that the ALJ erred in not according Ms. Thunberg's opinions

controlling weight.  Specifically, Plaintiff asserts that because Ms. Thunberg's PIQ

was co-signed by Dr. Randall, the opinions should have been construed as rendered from a "treatment team," thereby warranting controlling weight typically afforded to a treating physician.  (Doc. 19 at 16-19.)  The undersigned disagrees.

Plaintiff relies on *Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) and *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1037-39 (9th Cir. 2003), in support of her argument that Ms. Thunberg's PIQ should be viewed as part of a "treatment team."  Those cases stand for the proposition that opinions of an "other" medical source can be considered "treating" source opinions when the claimant establishes that "they were part of, and therefore represent the views of, a treatment team that includes an acceptable medical source in accordance with the regulations."  *Butler v. Astrue*, No. CA 11-295-C, 2012 WL 1094448, at *4 n.5 (S.D. Ala. Mar. 30, 2012) (discussing the application of *Shontos*) (emphasis omitted).

The difference here is that Plaintiff failed to establish that Ms. Thunberg's opinions were part of, and represented the views of, a treatment team that included an acceptable medical source.  Despite Plaintiff's argument to the contrary, there is no evidence that Dr. Randall was part of Plaintiff's treatment team.  Other than co-signing the PIQ (and a letter on Ms. Thunberg's letterhead updating the PIQ dated June 2, 2011), there is no medical record evidence that

Dr. Randall examined or treated Plaintiff.[2]  *See, e.g., Jackson v. Colvin*, No. 1:14-cv-1868-AJB, 2015 WL 5601876, at *15 (N.D. Ga. Sept. 23, 2015) ("[T]here is no medical record evidence that Dr. Johnson examined or treated Plaintiff on any day prior to the day she rendered her medical opinion.").  Indeed, Plaintiff concedes that "there is no evidence that Dr. Randall has personally treated [Plaintiff]."  (Doc. 19 at 16.)  Moreover, there is no evidence indicating that Dr. Randall was associated with or had any contact with Plaintiff's treatment, or that she even reviewed Plaintiff's treatment record.  *See Jackson*, 2015 WL 5601876, at *15 ("Also, there is no evidence that Dr. Johnson was associated with or had any contact with Plaintiff's treatment team or those doctors who oversaw Plaintiff's treatment.  Nor is there even any evidence that Dr. Johnson reviewed Plaintiff's treatment record."); *see also Seward v. Colvin*, No. CIV-14-1216-L, 2015 WL 5826471, at *3 n.2 (W.D. Okla. Aug. 27, 2015) ("If Plaintiff is hinting that Dr. Ayitey's signature elevates Nurse Geurts to an acceptable medical source, she is incorrect.") (citation omitted), *adopted in* 2015 WL 5837614; *Borden v. Comm'r of Soc. Sec.*, No. 1:13CV2211, 2014 WL 7334176, at *9 n.2 (N.D. Ohio Dec. 19, 2014) ("Though Borden points out that Ms. Fuller's reports were co-signed by a psychiatrist, the Court finds this fact immaterial.  Furthermore, a

---

[2] In *Shontos*, the "treatment team" consisted of, *inter alia*, a *treating* clinical psychologist–an acceptable medical source under the regulations.  *See Shontos*, 328 F.3d at 421.

10

'team' opinion signed by a physician and nurse practitioner does not qualify as a treating source opinion when there is no evidence demonstrating that the statement presented to the ALJ represented the opinions of a team effort, or that the medical facility used a team approach to a claimant's mental health treatment."); *Williams v. Astrue*, No. 4:09CV3116, 2011 WL 1226099, at *14 (D. Ne. Mar. 28, 2011) (explaining that the claimant's reliance on *Shontos* was misplaced and stating that "[w]hile [the non-acceptable medical source's] outpatient progress notes were copied to Dr. Seizys, there is no indication in the record that Dr. Seizys provided [the claimant] with any psychiatric treatment or evaluation . . . or that [the non-acceptable medical source] consulted with Dr. Seizys regarding [the claimant's] treatment"); *Nichols v. Comm'r of Soc. Sec.*, 260 F. Supp. 2d 1057, 1066 (D. Kan. 2003) ("Here, the record show [sic] only the co-signing of the report by Dr. Thompson.  The mere co-signing of the report does not create an interdisciplinary team within the meaning of the regulation.  Consequently, the opinions contained in the Medical Source Statement can only be attributed to Ms. Heller [a nurse practitioner].").  Accordingly, Plaintiff failed to show that Ms. Thunberg's opinions are entitled to the deference due a treating source.

The ALJ correctly considered Ms. Thunberg an "other source" rather than as a treating source or an acceptable medical source.  "Mental health counselors

are not 'acceptable medical sources' for establishing an impairment, 20 C.F.R. §§ 404.1513(a), 416.913(a), but are considered 'other medical sources' whose testimony may be used 'to show the severity of . .  impairment(s) and how it affects [the] ability to work.'" *Doyle v. Comm'r of Soc. Sec.*, No. 6:15-cv-2131-Orl-PGB-PRL, 2017 WL 474107, at *4 (M.D. Fla. Jan. 13, 2017) (quoting 20 C.F.R. § 404.1513(d)(1) & citing *Szilvasi v. Comm'r of Soc. Sec.*, 555 F. App'x 898, 901 (11th Cir. 2014)), *adopted in* 2017 WL 468424.  While "other medical sources" must be considered by the ALJ, *Douglas v. Colvin*, No. 4:12cv332-WS, 2014 WL 29379, at *12 (N.D. Fla. Jan. 3, 2014), their opinions are not entitled to any significant or controlling weight, *Miles v. Comm'r Soc. Sec*, 469 F. App'x 743, 745 (11th Cir. 2012) (citing 20 C.F.R. §§ 404.1513, 416.913, 404.1527(a)(2) & *Crawford*, 363 F.3d at 1160).

This case does not present a scenario whereby the ALJ failed to consider the opinions of Ms. Thunberg.  Rather, the ALJ here considered Ms. Thunberg's opinions and found no support for them.  (Tr. 30.)  The ALJ specifically articulated that Ms. Thunberg's opinions were inconsistent with the mental status evaluations of Drs. Stephenson and Verones, both of whom are considered acceptable medical sources.  (*Id.*)  The ALJ discussed Dr. Stephenson's evaluation that included reported average scores in intelligence, attention, language comprehension, memory, calculation, reasoning and judgment.  (Tr. 30, 693.)

The ALJ also discussed Dr. Verones' evaluation, who noted that "formal testing did not show any significant problems with memory that would interfere with [Plaintiff's] ability to work," and who concluded that "her physical problems appear to be her main claim for disability."  (Tr. 30, 1037.)

Additionally, the ALJ found Ms. Thunberg's opinions inconsistent with more recent progress notes from Stewart-Marchman-ACT Behavioral Healthcare ("Stewart Marchman"), reflecting no significant deficits with concentration or memory.  (Tr. 30, 1190, 1195, 1200, 1205, 1211, 1212, 1216 (documenting "No Memory Impairments," and either "Adequate" attention and concentration or "Mildly Impaired" attention and concentration).)  The ALJ also found Ms. Thunberg's opinions inconsistent with her own treatment notes, documenting affect congruent with her mood, no evidence of thought disorder, orientation x3, average intelligence with reasonable insight and judgment, and a GAF score of 56, denoting that Plaintiff's symptoms were less severe than her allegations.  (Tr. 30, 839, 1094.)  The ALJ properly considered Ms. Thunberg's opinions, found no support for them, and articulated reasons supported by substantial evidence for such finding.[3]

---

[3] To the extent Plaintiff argues that the ALJ erred in considering the GAF score assigned by Ms. Thunberg, such argument is unpersuasive.  The ALJ may consider a GAF score to evaluate the severity of Plaintiff's mental impairment.  *See, e.g., Torres v. Colvin*, No. 3:13-cv-1385-J-JRK, 2015 WL 1064639, at *7 (M.D. Fla. Mar. 11, 2015) (holding that the ALJ did not err by taking into account GAF scores of a non-acceptable medical source (continued...)

### ii.    Ms. Larkawilla

Plaintiff also argues that the ALJ failed to adequately consider the opinions of nurse practitioner, Ms. Larkawilla.  However, similar to Ms. Thunberg, Ms. Larkawilla is a non-acceptable medical source, who is not entitled to significant or controlling weight.  The ALJ properly evaluated Ms. Larkawilla as an "other source" and accorded her opinions no weight.  (Tr. 31.)  The ALJ's decision in this regard is supported by substantial evidence.  Similar to the opinions of Ms. Thunberg, the ALJ found Ms. Larkawilla's opinions inconsistent with the opinions of Drs. Stephenson and Verones, whom reported appropriate interaction, no significant defects with formal memory testing, and overall normal mental status.  (Tr. 31, 689, 1037.)  Moreover, the ALJ found Ms. Larkawilla's opinions inconsistent with the objective medical evidence and noted that Plaintiff's complaints have been mostly situationally related.  (Tr. 31, 839, 1098-1109, 1189-1216.)  The Court finds no error with respect to the ALJ's evaluation of Ms. Larkawilla.

### iii.    Dr. Offenberg

Plaintiff finally contends that the ALJ erred in evaluating the opinions of Dr. Offenberg, Plaintiff's treating physician.  The ALJ afforded "some weight" to Dr.

---

[3](...continued)
and by using the GAF scores as one reason for concluding that plaintiff's mental symptoms were not disabling).

Offenberg's opinions as to Plaintiff's weight restrictions, but afforded "no weight" to Plaintiff's postural limitations, and duration for sitting, standing, and walking. (Tr. 31.)

Contrary to Plaintiff's contention, the ALJ gave explicit reasons supported by substantial evidence for discounting Dr. Offenberg's opinions with respect to such limitations.  For example, the ALJ stated that Dr. Offenberg's suggested postural limitations were inconsistent with the record medical evidence.  The ALJ noted that Plaintiff exhibited a normal gait in 2011 medical examinations.  (Tr. 31, 956, 958.)  The ALJ also noted that Plaintiff exhibited full strength and that diagnostic studies have been rather mild.  (Tr. 31, 948-49 (indicating mild x-ray results); 953, 956 & 958 (reporting normal gait); 1110 ("Negative for arthralgias and myalgias"); 1132-37 (showing no objective abnormalities); 1162 & 1175 (indicating normal straight leg raise, reflexes within normal limits, no sensory deficits, and intact strength).)  Moreover, the ALJ found Dr. Offenberg's suggested postural limitations inconsistent with his own treatment notes, which "d[id] not document any significant limitations on examinations."  (Tr. 31, 973-75.) The ALJ noted that Dr. Offenberg's examinations show positive diffuse spinal pain, but were otherwise within normal limits.  (Tr. 27, 1114-16.)  The ALJ articulated good cause supported by substantial evidence for rejecting the postural limitations of Dr. Offenberg.

15

## C.     The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff next argues that the ALJ's evaluation of Plaintiff's credibility is not

supported by substantial evidence.  The Eleventh Circuit has established a three-

part "pain standard" that applies when a claimant seeks to establish disability

through his own testimony of pain or other subjective symptoms.  *Holt v. Sullivan*,

921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to

credit  such testimony, he must articulate explicit and adequate reasons for doing

so."  *Ia.*

> The pain standard requires (1) evidence of an underlying
> medical condition and either (2) objective medical evidence
> that confirms the severity of the alleged pain arising from that
> condition or (3) that the objectively determined medical
> condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her "pain is disabling through objective

medical evidence that an underlying medical condition exists that could

reasonably be expected to produce the pain," pursuant to 20 C.F.R. §§ 404.1529,

416.929(a) "all evidence about the intensity, persistence, and functionally limiting

effects of pain or other symptoms must be considered in addition to the medical

signs and laboratory findings in deciding the issue of disability."  *Foote*, 67 F.3d at

1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically

determinable impairment exists, the ALJ must analyze "the intensity, persistence,

16

and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . .  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.[4]  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

---

[4] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

The Court finds that the ALJ provided a clearly articulated credibility finding with substantial supporting evidence.  Here, the ALJ noted Plaintiff's subjective complaints of pain and found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of such symptoms are not entirely credible for the reasons explained in the decision. (Tr. 25.)  The ALJ continued with the analysis, referencing the probative record evidence and articulating explicit reasons for discounting Plaintiff's credibility.  (Tr. 26-30.)

For example, the ALJ considered the objective medical evidence of record and "f[ou]nd no cogent reason why [Plaintiff] would be disabled within the meaning of the Regulations."  (Tr. 27.)  With respect to Plaintiff's alleged complaints regarding back pain and fibromyalgia, the ALJ explained that examinations and diagnostic studies do not support Plaintiff's severe complaints. The ALJ referenced no objective gait abnormalities (Tr. 747 ("[A]ble to position

18

herself from the chair to the exam table and back"); 947, 953, 956, 958 (reporting normal gait and posture).)  The ALJ also noted normal strength, normal range of motion, and no sensory deficits of Plaintiff's extremities.  (Tr. 28 & 657 (documenting good range of motion despite Plaintiff's alleged difficulty in rasing right arm); 1014 ("[G]rossly normal tone and muscle strength"); 1162 & 1175 (indicating normal straight leg raise, reflexes within normal limits, no sensory deficits, and intact strength).)  The ALJ referenced relatively normal examinations and diagnostic studies.  (*See* Tr. 28; 738, 747, 753, 759, 761, 772, 774, 780, 784, 786, 884, 886, 892, 895, 901, 905, 907, 922, 932, 939, 1014, 1019, 1026, 1043, 1045, 1051, 1088, 1091, 1110 (noting normal neurological examinations); 759, 772, 784, 884, 892, 905, 922, 932, 1043, 1045, 1048, 1050, 1091 (indicating no edema, clubbing and/or deformities of Plaintiff's extremities); 1026 & 1110 ("Negative for arthralgias and myalgias"); 114-16 (noting no abnormalities besides positive diffuse spinal pain); *see also* Tr. 849 (revealing in December 2010 bone density evaluation only mild osteopenia); 948-49 (indicating in June 2011 x-rays of cervical and lumbar spine that Plaintiff had disc degeneration with mild kyphosis and mild lumbar spondylosis).)

The ALJ noted that Plaintiff's diabetes and sleep apnea were stable.  (Tr. 54, 1079, 1183, 1112, 1134.)  The ALJ also noted the relatively benign mental status examinations and mild to moderate GAF scores.  (Tr. 693 (reporting

average scores in intelligence attention, language comprehension, memory, calculation, reasoning and judgment); 799 (reporting GAF of 55); 1004-11 (reporting thoughts as logical and coherent and no psychosis); 1030-37 (revealing no significant deficits and a GAF of 60); 1128 & 1130 (reporting improved mood, sleeping well and good appetite often during June/July 2013); 1215 (presenting as stable and as having improved depressive symptoms in May 2015).)

Moreover, the ALJ noted Plaintiff's fairly conservative treatment and explained that Plaintiff's symptoms appear to have been controlled with medication despite her allegations to the contrary.  (Tr. 28-29.)  Plaintiff reported that Tylenol and hot baths help alleviate her pain.  (Tr. 507.)  The record also reveals improvement with prescribed medications.  (Tr. 838 (reporting that Lexapro "worked very well" and that Cymbalta "helps with pain but not completely"); 893 ("Cymbalta has been helpful in markedly reducing pain form her fibromyalgia."); 1110 ("[T]he psychiatrist (NP) has her on Xanax, Cymbalta, and Lexapro . . . patient sees an improvement."); 1132 ("[S]he appears to be doing relatively well on the Cymbalta/Lexapro.").)

Plaintiff contends that the ALJ improperly characterized her treatment as "conservative."  The undersigned disagrees.  As noted by the ALJ, Plaintiff's treatment was fairly conservative, as noted by the nurse practitioner at Panacea

Alliance, who recorded the treatment as "medication management" with "[s]upportive psychotherapy," and prescribed such treatment in two to three month intervals.  (Tr. 1125, 1127, 1129, 1131.)  A similar treatment regimen was noted in more recent progress notes from Stewart Marchman.  (Tr. 1194, 1199, 1204, 1209, 1215 (characterizing treatment as "medication management" and denying hospitalizations).)  The ALJ reasonably concluded that the treatment regiment was inconsistent with Plaintiff's allegations of debilitating mental symptoms.

Plaintiff's contention that the ALJ erred by "relying heavily" on her GAF scores similarly lacks merit.  First, the ALJ did not "rely heavily" on Plaintiff's GAF scores as Plaintiff suggests.  Rather, the ALJ considered the objective medical evidence and found it inconsistent with Plaintiff's allegations.  The ALJ noted Plaintiff's fairly conservative treatment, her improvement with medications, her fairly benign mental examinations, her recent progress notes showing improvement in mental status, and her own reports of improvement, as well as her GAF scores.  (Tr. 29-30.)  Second, it is not error for the ALJ to consider Plaintiff's GAF scores in determining the severity of Plaintiff's symptoms.  *See supra* n.3.

Plaintiff also argues that the ALJ erred in failing to consider her financial situation while noting her failure to take pain medications.  Again, the

undersigned disagrees.  The ALJ discussed her financial situation at the hearing, considered it, and explained it in the decision.  (Tr. 25, 77-81.)  Nevertheless, the undersigned finds that any error committed by the ALJ in evaluating Plaintiff's non-compliance as a factor to discredit her testimony is harmless because Plaintiff's non-compliance was not a primary reason for finding Plaintiff not disabled and, based on the above discussion, the ALJ provided other valid reasons for discrediting Plaintiff's testimony that are supported by substantial evidence.  *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that ALJ's insufficient analysis of the plaintiff's non-compliance with medications does not constitute reversible error where the ALJ's determination that the plaintiff was not disabled was not significantly based on a finding of non-compliance); *Alcott v. Comm'r of Soc. Sec.*, No. 6:12-cv-453-Orl-DAB, 2013 WL 646173, at *6-9 (M.D. Fla. Feb. 21, 2013) (rejecting Plaintiff's argument that the ALJ erred in discrediting his testimony based on non-compliance where non-compliance was related to his mental limitations and noting that the ALJ relied on additional reasons supported by substantial evidence for finding Plaintiff not disabled); *Simpson v. Colvin*, No. 14-288-N, 2015 WL 3447880, at *7 (S.D. Ala. May 29, 2015) ("Nevertheless, the ALJ's credibility determination may still be affirmed if [] valid reasons [other than non-compliance], supported by substantial evidence, are present.").

Finally, Plaintiff points to evidence in favor of her credibility to indicate that the ALJ erred in the credibility evaluation.  However, Plaintiff's argument in this regard does nothing more than invite the Court to improperly re-weigh evidence and invade the province of the ALJ, who has the ultimate duty to make the RFC determination based on the evidence presented.  *See, e.g., Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence.") (citations omitted); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the [ALJ], not of the district court."); *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (stating that when there is conflicting evidence on an issue, "it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly") (citing *Richardson v. Perales*, 402 U.S. 389, 389-403 (1971)).  The ALJ's decision is supported by substantial evidence as explained above.

**D.    The ALJ's Determination at Step Five Was Proper**

Plaintiff finally argues that the determination at step five was not supported by substantial evidence.  Namely, Plaintiff asserts that this determination was improper because of the ALJ's failure to include moderate limitations in concentration, persistence, or pace in the hypothetical to the VE.  Plaintiff relies

on the Eleventh Circuit's holding in *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d at 1180, in support of her argument.  However, unlike the ALJ in *Winschel*, the ALJ here considered the medical evidence regarding all of Plaintiff's limitations before finding that she could complete semi-skilled work.  (Tr. 24 ("[T]he following [RFC] assessment reflects the degree of limitation the undersigned has found in 'paragraph B' mental function analysis.").)  The ALJ considered the record evidence and determined that Plaintiff is "capable of semi-skilled work, which includes simple tasks."  (Tr. 33.)  The ALJ articulated explicit reasons supporting this finding, which are supported by substantial evidence.  (Tr. 33, 693, 799, 1004-11, 1030-37, 1128, 1130, 1215.)  After making this determination, the ALJ posed a hypothetical to the VE that included the limitations in Plaintiff's RFC determination.  The VE responded that Plaintiff could perform past relevant work as a receptionist.  The undersigned finds no reversible error by the ALJ with respect to this issue.  *See Szilvasi*, 555 F. App'x at 902 (distinguishing *Winschel* as the ALJ in *Winschel* failed to indicate that medical evidence suggested that the claimant's ability to work was unaffected by his limitations; whereas in the case before it, the ALJ properly considered the medical evidence regarding all of the claimant's limitations before finding that he could complete simple routine tasks); *see also Bragg v. Comm'r of Soc. Sec.*, No. 11-10579, 2012 WL 1079925, at *2 (E.D. Mich. Mar. 30, 2012) (rejecting the claimant's contention that the semi-

skilled work aspect of the ALJ's RFC determination was inconsistent with the ALJ's finding that he has moderate limitations in concentration, persistence, and pace, and finding that the ALJ properly considered record evidence and reasonably concluded that Plaintiff could perform semi-skilled work, notwithstanding the limitations).

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the undersigned affirms the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question.

Accordingly, it is **ORDERED** that:

1.    The Commissioner's decision is **AFFIRMED**.

2.    The Clerk of Court be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on March 29, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record